UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
GUY WOODARD,                                       :
                                                   :
          Petitioner,                    :
                                                   :    04 CIV 9695 (HB)
          -against-                     :
                                                   :    <u>OPINION & ORDER</u>
UNITED STATES OF AMERICA                           :
                                                   :
          Respondent.                    :
------------------------------------------------------------------------x
**Hon. HAROLD BAER, JR., District Judge:**[*]

On October 18, 2004, Guy Woodard ("Woodard") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.[1] On May 30, 2001 this Court sentenced Woodard to ninety months imprisonment, followed by three years supervised release, and restitution in the amount of $52,000. Woodard seeks to vacate his sentence based on: (1) ineffective assistance of counsel, (2) actual innocence, and (3) improper calculation of his guidelines sentence. For the following reasons, the petition is DENIED.

I.    BACKGROUND

On February 27, 1997, Woodard pled guilty pursuant to a plea agreement to transporting stolen checks in interstate commerce, a violation of 18 U.S.C. § 2314. Prior to sentencing, while on bail, Woodard was charged with wire fraud[2] and money laundering[3] based on his involvement in an unrelated scheme concerning the theft and negotiation of New York State Power Authority checks. On December 19, 1997, Woodard pled guilty to the new charges pursuant to a cooperation

---

[*] Kohsei Ugumori, a fall 2005 intern in my Chambers, and currently a third-year law student at New York Law School, provided substantial assistance in the research and drafting of this Opinion.
[1] This case has been consolidated with a second petition filed by Woodard which was assigned docket # 05-cv-480. The two petitions, which were identical, were received by this Court's Pro Se office on the same day, but were inexplicably assigned two different docket numbers.
[2] 18 U.S.C. § 1343.
[3] 18 U.S.C. § 1956(a)(2)(B)(i).

1

agreement ("Cooperation Agreement"). The Cooperation Agreement encompassed both the earlier charge to which Woodard had already plead guilty as well as the new charges. In his allocution, Woodard stated under oath that he was satisfied with the representation provided by his attorney, Jeh Johnson ("Johnson"), that he had discussed the Cooperation Agreement with his lawyer, and that he was not coerced to plead guilty in any way. (Sealed Plea Tr. 12/19/97 at 7, 19.)

On February 7, 1999, Woodard was charged in New Jersey with possessing a fraudulent credit card. Soon after, on February 18, 1999, Woodard pled guilty in Pennsylvania to driving under the influence of alcohol. Each of these offenses violated Woodard's Cooperation Agreement and his bail conditions. This Court issued a bench warrant on March 8, 1999 for Woodard's arrest.

Meanwhile, since Johnson had left private practice, this Court appointed a new attorney, Richard Lind ("Lind"), to represent Woodard. However, Woodard was unhappy with Lind's representation,[4] and this Court relieved Lind and replaced him with Ronald Garnett ("Garnett") on January 4, 2000.

At sentencing, Garnett argued that Woodard did not intend to violate his bail conditions or to obstruct justice, and also that Woodard should be in criminal history Category V (rather than VI) of the sentencing guidelines because two of his prior convictions are really one. (Sentencing Tr. 3/14/00 *passim.*) In addition, Garnett argued that Woodard was not guilty of money laundering[5] because Woodard's use of fake identities and his transfer of funds to the Cayman Islands were an effort to "obtain" rather than "conceal" funds;[6] and moreover a downward departure was

---

[4] At one point during a conference, Woodard exclaimed, "he's at the wrong table, your honor." (Sentencing Tr. 1/4/00 at 7.)
[5] Although this argument contradicts Woodard's plea to the Cooperation Agreement, Garnett nevertheless made it at Woodard's behest. (Sentencing Tr. 3/14/00 at 10.)
[6] 18 U.S.C. 1956(a)(2)(B)(i) reads in relevant part: "Whoever transports … monetary … funds … designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity [is guilty of money laundering]."

2

appropriate because Woodard's money laundering scheme was not what Congress intended the money laundering statute to encompass. (Id. at 10-16.)

This Court rejected each of Woodard's arguments. Woodard was sentenced to 100 months in prison based on a total offense level of twenty-four. Garnett appealed only the court's two-level enhancement for obstruction of justice. The Second Circuit found that the two-level enhancement was not warranted and vacated Woodard's sentence. United States v. Woodard, 239 F.3d 159, 163 (2d Cir. 2001).

After the Court of Appeals' decision, Woodard complained that he was dissatisfied with Garnett's representation. Thus, prior to re-sentencing, Philip Edelbaum ("Edelbaum") was appointed to represent Woodard. At re-sentencing, this Court did not impose an enhancement for obstruction of justice, and reduced Woodard's offense level from twenty-four to twenty-two. Woodard was re-sentenced to ninety months. After re-sentencing, Edelbaum was replaced by Steven Feldman ("Feldman") due to health problems.

Woodard was also dissatisfied with Feldman, complaining that Feldman failed to communicate with him. Feldman filed an "Anders brief,"[7] which stated that there were no non-frivolous grounds for appeal and requested that he be relieved from further representation of Woodard. The Second Circuit granted Feldman's motion, finding that under United States v. Quintieri, 306 F.3d 1217, 1226-27 (2d Cir. 2002) Woodard was barred from raising issues that he had failed to raise on his first appeal. (Ct. App. Order dated 12/23/03.)

---

[7] See Anders v. California, 386 U.S. 738, 744 (1967) (holding that if "counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.").

II.	STANDARD OF REVIEW

In order to prevail here under 28 U.S.C. § 2255, a petitioner must show either: 1) his sentence was imposed in violation of the Constitution or laws of the United States; 2) the court was without jurisdiction to impose such sentence; or 3) the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. See Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002).

A habeas petition that raises a claim for the first time on collateral review must demonstrate "cause" and "actual prejudice." See Reed v. Farley, 512 U.S. 339, 354 (1994) (where the petitioner fails to properly raise a claim on direct review, "the writ [of habeas corpus] is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged [violation].'") (internal citations omitted). "Cause" requires the petitioner to demonstrate that he was prevented from raising the issue on direct appeal. See Sanchez v. United States, 2005 U.S. Dist. LEXIS 7555, at *4-5 (S.D.N.Y. Apr. 30, 2005). "Actual prejudice" requires that "the claim be of merit, thereby denying the petitioner justice [if the claim was not entertained]." Id. at *5 (internal citation omitted).

III.	DISCUSSION

Woodard presents three claims in the instant petition for habeas corpus: 1) ineffective assistance of counsel, 2) actual innocence, and 3) improper calculation of his guidelines sentence.

A.	Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must satisfy the two-pronged performance and prejudice test articulated in Strickland v. Washington, 466 U.S. 668 (1984). A petitioner must show that counsel's performance fell below an objectively reasonable standard of performance, and that that deficient performance prejudiced the outcome of the proceeding. See United States v. Aguirre,

912 F.2d 555, 560 (2d Cir. 1990); Smith v. Robbins, 528 U.S. 259, 285 (2000) (stating that the proper standard for evaluating ineffective assistance of counsel in regards to an "Anders brief" is Strickland); Smith v. Murray, 477 U.S. 527, 535-36 (1986) (stating that the Strickland standard applies in reviewing ineffective assistance of appellate counsel). Prejudice is shown if, but for the deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. Id. at 534. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. See also Aguirre, 912 F.2d at 561 ("The court's central concern is … discerning … [whether] the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.").

      i.     Johnson's Representation of Woodard in Connection with the Cooperation Agreement.

Johnson's representation of Woodard during the course of Woodard's plea to the money laundering charge did not constitute ineffective assistance of counsel. Woodard fails to show either that Johnson's performance fell below an objectively reasonable standard of performance, or that he suffered prejudice as a result of counsel's error. Strickland's prejudice prong is satisfied if, but for counsel's errors, there is a reasonable probability that Woodard would not have pled guilty and would have gone to trial. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). Thus, prejudice is shown if a competent investigation by counsel would have changed *counsel's* choice to advise defendant to plead guilty. Miller v. Angliker, 848 F.2d 1312, 1322 (2d Cir. 1988). Woodard does not allege that Johnson failed to perform a competent investigation that would have changed Johnson's decision to advise Woodard to plead guilty. Moreover, Woodard does not claim that Johnson misled him or that Johnson failed to inform Woodard of his rights. While Woodard now claims his innocence,[8]

---

[8] In his petition, Woodard asserts that Johnson "talked [Woodard] into pleading guilty to a . . . charge that he insisted he was innocent of." (Petition at 5.) However, petitioner provides no support for this assertion, and does not even mention Johnson's allegedly ineffective representation in his accompanying memorandum of law.

5

Woodard stated under oath that he was fully satisfied with Johnson's representation before pleading guilty. (Sealed Plea Tr. 12/19/97 at 7.) Thus, Woodard has failed to show ineffective assistance of counsel in connection with his guilty plea.

      ii.      Garnett's Failure to Appeal Woodard's Money Laundering Conviction and this Court's Refusal to Grant a Downward Departure.

Woodard argues that Garnett's failure to appeal Woodard's guilty plea for money laundering constitutes deficient performance. The decision not to raise an issue on appeal, however, typically does not constitute deficient performance. See Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (stating that the failure of counsel to appeal every non-frivolous issue is not deficient performance). In Jones v. Barnes, 463 U.S. 745, 751 (1983), the Court found that an indigent defendant does not have a constitutional right to "compel appointed counsel to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Garnett appealed the two-level enhancement for obstruction of justice, and the Court of Appeals reversed. Tactical decisions, including counsel's decision not to dilute the petitioner's appellate brief with less meritorious claims, do not constitute ineffective assistance of counsel. See Barnes, 463 U.S. at 751; Strickland, 466 U.S. at 689 (stating that counsel has wide latitude in making tactical decisions).

Woodard's argument that he was not guilty of money laundering because he only "obtained" funds rather than "concealed" them — by creating bank accounts under aliases and by wiring money to the Cayman Islands — was far-fetched. See infra Part III(B). Moreover, Woodard pled guilty to money laundering, and the statements made at allocutions carry a strong presumption of validity. See Adames v. United States, 171 F.3d 728, 732-33 (2d Cir. 1999) ("Statements at plea allocution are generally treated as conclusive in the face of the defendant's later attempt to contradict them."). Rule 11 of the Federal Rules of Criminal Procedure requires that the court

6

determine the "factual basis for a plea." Fed. R. Crim. P. 11(b)(1)(G) & (b)(3). Woodard stated under oath that the charges had been explained to him and that he understood the nature of the charges. (Sealed Plea Tr. 12/19/97 at 6-7); see also Bradshaw v. Stumpf, __ U.S. __; 125 S. Ct. 2398, 2405 (2005) (stating that a guilty plea is valid if the nature and elements of the crime are explained to the defendant by either the court or defense counsel). Given the questionable merit of any appeal of the money laundering conviction, the presumption of validity given to a guilty plea, and the tactical discretion awarded to counsel, Garnett's failure to appeal the money laundering conviction does not constitute ineffective assistance of counsel. Cf. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker").

Similarly, Woodard's claim that Garnett's failure to appeal this Court's refusal to downwardly depart does not constitute deficient performance. A court's decision not to depart from the sentencing guidelines is not appealable unless it constitutes a violation of law or a misapplication of the sentencing guidelines. United States v. Zapata, 135 F.3d 844, 846 (2d Cir. 1998). Garnett first raised the issue of a downward departure at Woodard's sentencing hearing on March 14, 2000. (Sentencing Tr. 3/14/00 at 13.) This Court then adjourned the sentencing for one month to consider the merits of a downward departure, and ultimately concluded that such a departure was inappropriate.[9] Therefore, Garnett's decision not to appeal this Court's refusal to depart from the sentencing guidelines does not constitute deficient performance.

---

[9] On April 12, 2000, after considering United States v. El-Gheur, 201 F.3d 90 (2d Cir. 2000), this Court concluded that it was "impossible … to find a way out of the heartland, which is the sliver left for departures under the sentencing guidelines." (Sentencing Tr., 4/12/00 at 4.)

7

iii.     Edelbaum's Failure to Object to Woodard's Placement in Criminal History
Category VI of the Sentencing Guidelines at Woodard's Re-sentencing.

Woodard argues that Edelbaum's failure to object to his placement in Criminal History Category VI at re-sentencing constituted deficient performance. However, Edelbaum's decision not to challenge Woodard's placement in Criminal History Category VI was reasonable.

The sentencing guidelines provide that "prior sentences imposed in unrelated cases are to be counted separately." U.S.S.G. § 4A1.2(a)(2) (2000). As the record from the first sentencing hearing reveals, the convictions in question were for two separate crimes — committed at different times and locations — and as such may not count as a single prior conviction. (Sentencing Tr. 3/14/00 at 17-19.) In any case, the "mandate rule" restricted Edelbaum from raising any issues that were not raised on Woodard's initial appeal, and required him to confine his argument to whether the obstruction of justice enhancement was appropriate. United States v. Quintieri, 306 F.3d 1217, 1226-27 (2d Cir. 2002) (stating the mandate rule provides that when the Second Circuit remands a case for re-sentencing on a specific issue, defendant is not allowed to raise issues not brought on appeal). Accordingly, Edelbaum's failure to object at re-sentencing to Woodard's placement in Criminal History Category VI of the sentencing guidelines does not constitute deficient performance. Put another way, it was too late to raise this issue.

iv.     Feldman's Failure to Appeal from the Re-sentencing.

Feldman's failure to contact and consult Woodard before filing an Anders Brief with the Second Circuit did not constitute ineffective assistance of counsel. Counsel may withdraw from representation on appeal if counsel believes there are no non-frivolous arguments to appeal, provided that counsel conducts a "conscientious examination" of the case and submits a brief to the court "referring to anything in the record that might arguably support an appeal." Penson v. Ohio, 488 U.S. 75, 80 (1988). "Conscientious examination" is determined by the circumstances and

8

nature of the case. Strickland, 466 U.S. at 690-91 (stating that strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations"). Feldman's decision was based on the fact that Woodard had originally appealed only the obstruction of justice enhancement, and having prevailed at the Second Circuit, was re-sentenced accordingly. Thus, there were no arguably meritorious issues upon which an appeal could have been taken.

 B. Actual Innocence

Woodard argues that his sentence should be vacated because he is innocent of money laundering. To succeed here, Woodard must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623-24 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)) (quotation marks omitted). To prevail under 28 U.S.C. § 2255 on a claim of actual innocence, Woodard must demonstrate "actual innocence on the existing record" and the "inability to effectively raise that claim of innocence at an earlier time." Cephas v. Nash, 328 F.3d 98, 104 (2d Cir. 2003).

Woodard pled guilty to money laundering. (Sealed Plea Tr. 12/19/97 at 2, 22.) Woodard stated under oath that he was not forced to plead guilty by reason of fear, pressure, or threat. (Sealed Plea Tr. 12/19/97 at 18-19.) Statements during plea allocutions "constitute a formidable barrier in any subsequent collateral proceeding," and "solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Adames v. United States, 171 F.3d 728, 732-33 (2d Cir. 1999) ("Statements at plea allocation are generally treated as conclusive in the face of the defendant's later attempt to contradict them.").

Woodard contends that he is innocent of money laundering because he did not intend to disguise or conceal the proceeds of his unlawful activity. (Petitioner's Mem. at 6-10.) Woodard's

9

transfer of funds outside of the United States to the Cayman Island's under a false name is sufficient evidence for a reasonable jury to infer Woodard's intent to "conceal."[10] See United States v. Ness, 2003 U.S. Dist. LEXIS 13561, at *25-26 (S.D.N.Y Aug. 6, 2003) (finding that a reasonable jury could infer an intent to conceal when the defendant transported funds abroad in an irregular manner and lacked receipts for his transactions); United States v. Polichemi, 219 F.3d 698, 707 (7th Cir. 2000) (stating that a reasonable jury could infer an intent to conceal when the defendant transferred monies abroad, making it difficult to investigate the transfer). Therefore, Woodard has failed to show "actual innocence" on the existing record.

    C.    Improper Sentencing

Woodard claims that his sentence is invalid because this Court failed to re-sentence him at the bottom of the applicable guidelines range, and because this Court refused to group his money laundering and wire fraud charges.[11]

    i.    Improper Re-sentencing

To prevail on a claim of improper sentencing under 18 U.S.C. § 2255, the imposed sentence must be outside of the recommended guidelines range. U.S. v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999) (stating that a sentence imposed within the sentencing guidelines is not reviewable under 18 U.S.C. § 2255). Moreover, absent a "complete miscarriage of justice" or a "proceeding inconsistent with the rudimentary demands of fair procedure," claims of misapplication of the sentencing guidelines are not cognizable under 18 U.S.C. § 2255. United States v. McCoy, 1997 U.S. Dist. LEXIS 7702, *4 (S.D.N.Y. June 3, 1997). Woodard argues that he did not "reap the full benefits" of his two-level decrease at re-sentencing because he was initially sentenced at the bottom

---

[10] See 18 U.S.C. 1956 (a)(2)(B)(i) (providing that to sustain a money laundering conviction, transfers must be "designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity").
[11] United States v. Booker, __ U.S. __; 125 S. Ct. 738 (2005) is not at issue here because Woodard was sentenced five years before that ruling.

of the guidelines range (100 months), and was re-sentenced at the middle of the guidelines range (90 months).[12] However, Woodard received a new sentence that was ten months less than his initial sentence, and his sentence was not "in excess of the maximum authorized by law." 18 U.S.C. § 2255 ("A prisoner in custody [has a claim under this section if] the sentence was in excess of the maximum authorized by law …."). Woodard's sentence was not illegal or improper in any respect.[13]

        ii.       Refusal to Group Wire Fraud and Money Laundering

Woodard also claims that this Court erred in failing to group the wire fraud and money-laundering offenses. Under the sentencing guidelines in effect at the time of Woodard's re-sentencing, wire fraud and money-laundering offenses should not be grouped. U.S.S.G. § 1B11(a) & (b)(1) (2000); U.S. v. Napoli, 179 F.3d 1, 7-8 (2d Cir. 1999). Although the 2001 Amendments to the sentencing guidelines allow for the grouping of money laundering and wire fraud,[14] these changes (effective November 2001) are not applicable to Woodard, who was sentenced in May 2001. United States v. Keller, 58 F.3d 884, 890 (2d Cir. 1995) (stating that the sentencing guidelines in effect at the time of sentencing apply unless the application of new guidelines would violate the ex post facto clause). Therefore, Woodard's claim that this Court erred in refusing to group wire fraud and money laundering is without merit.

---

[12] Woodard's sentencing range at re-sentencing was between 84 and 105 months. (Sentencing Tr. 5/11/01 at 20.)
[13] Woodard's assertion that this Court violated his due process rights by giving him a harsher sentence is inapposite because he in fact received a lower sentence. See United States v. Mata, 133 F.3d 200, 202 (2d Cir. 1998) (finding that due process rights were not violated when defendant received four years less than the initial sentence imposed).
[14] U.S.S.G. §§ 2S1.1, 2S1.2 (2001) provide in relevant part: "In a case in which the defendant is convicted of a count of laundering funds and a count for the underlying offense from which the laundered funds were derived, the counts shall be grouped pursuant to subsection (c) of § 3D1.2."

11

IV. CONCLUSION

For the aforementioned reasons, Woodard's petition for a writ of habeas corpus is DENIED. The Clerk of the Court is instructed to close this case and any pending motions and to remove this case from my docket.

**SO ORDERED.**

**November 7, 2005**
**New York, New York**

_/s/_
U.S.D.J.